**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| ELRINE THIBODEAUX<br>*Plaintiff*<br>VERSUS<br>STATE FARM FIRE AND CASUALTY COMPANY,<br>*Defendant.* | CIVIL ACTION NO. 2:22-cv-06252<br><br>JUDGE JAMES D. CAIN, JR.<br><br>MAGISTRATE JUDGE THOMAS LEBLANC |

**PLAINTIFF'S MEMORANDUM IN SUPPORT**
**OF THE MOTION FOR PROTECTIVE ORDER**

Plaintiff, 87-year old Elrine Thibodeaux, respectfully moves for an order prohibiting State Farm from continuing the deposition which began on February 29, 2024, and after four grueling hours of irrelevant and harassing questions, the octogenarian walked out of the deposition. On May 14, 2024, Defendant-Insurer has requested that the deposition continue on May 22, 2024[2]. Due to her health concerns, the Court should prohibit Defendant, State Farm Fire and Casualty Company, from continuing the deposition in this matter.

The trial of this case is scheduled to begin on August 5, 2024. The Court's deadline for filing motions to compel is July 8, 2024, but there is no deadline for discovery.

**RELEVANT FACTS**

87-year-old Elrine Thibodeaux, who is a widow, resides in her home at 2720 Guy Street, Lake Charles, LA 70615 which was insured by Defendant-Insurer State Farm. Mrs. Thibodeaux's son, Stephen, lives with her and takes

---

[2] Exhibit A.

care of her. Hurricane Laura devastated the Lake Charles area on August 27, 2020, including Ms. Thibodeaux's home. On October 1, 2020, State Farm's adjuster completed the initial inspection of their Insured's hurricane damage, which constitutes satisfactory proof of loss under Louisiana law.

Mrs. Thibodeaux hired Cowboy Construction to repair her home. The total amount of the repair invoices from Cowboy Construction for her home were $167,250.65, including the emergency repairs to preserve the property from further damage. The total amount of the repair invoices from Cowboy Construction for the other structures were $24,349.01, including the emergency repairs including tarping the roof in the amount of $1,000.00.

During the interior repairs of her home, the 87-year-old insured was forced to live in the Super 8. Her son, Stephen, who in addition to being her care-giver, works at the casino. Stephen used his life savings to rent two rooms at the Super 8 for five months totaling $37,069.73 out of pocket. The Defendant-Insurer only made one timely payment in the amount of $8,960.25 under all of the coverages under the policy - - within thirty (30) days of receiving satisfactory proof of loss. State Farm has paid nothing more toward the claim.

Since the amount tendered by Defendant-Insurer was insufficient to pay for the roof, the 87-year-old Mrs. Thibodeaux is now receiving letters from a law firm seeking to collect the amounts owed to the roofing company.

## ARGUMENT

At the outset Ms. Thibodeaux acknowledges that her request for a protective order to prohibit the taking of her deposition is an extraordinary remedy. However, her request is not speculative nor hypothetical. Mrs. Thibodeaux's deposition was originally commenced at 10:00 a.m. During the four hours that followed Mrs. Thibodeaux repeatedly advised the Defendant-Insurer of her health issues affecting her deposition including that she was : Hard of hearing [3], her body doesn't work anymore[4], she has scoliosis[5], she gets very upset[6]; she has issues with her blood pressure[7], she gets tired[8], her spine is crooked which cases pain[9], she started not to feel well[10], she was hurting[11], she doesn't walk well[12], she can't work anymore[13], she can't stand long or walk distance[14] during her depo she started "losing energy"[15], she felt like the attorney for State Farm was trying to make her have a stroke and break her down[16] and at that point she was just trying to survive because of the stress of the deposition[17].

---

[3] Exhibit B – Page 7
[4] Exhibit B – Page 14
[5] Exhibit B – Page 18
[6] Exhibit B – Page 20
[7] Exhibit B – Pages 26 and 115
[8] Exhibit B – Page 45
[9] Exhibit B – Page 46
[10] Exhibit B – Page 53
[11] Exhibit B – Page 54
[12] Exhibit B – Page 92
[13] Exhibit B – Page 105
[14] Exhibit B – Page 120
[15] Exhibit B – Page 121
[16] Exhibit B – Page 122
[17] Exhibit B – Page 123

Aside from her health maladies, State farm pursued several issues that were completely irrelevant to the Hurricane Laura Claim including asking about her marriage in 1960 when she has been widowed since 1977, asking about her employment as a janitor at McNeese when she has been retired for more than twenty years, asking about her checking account, asking about her income from her pension, asking how many times her adult children bring the octogenarian lunch, asking about birthday gifts she receives from her family, and many other issues that were wholly irrelevant to the Hurricane Laura Claim.  State Farm squandered more than four hours questioning the Plaintiff about non-issues which were borderline harassing in light of her health condition.

Finally, after enduring more than four hours of interrogation Ms. Thibodeaux walked out.  The Court should read the exchange among Counsel for the Plaintiff and the Counsel for State Farm as it shows the toll that this four hour ordeal took on the octogenarian[18].

Therefore, this extraordinary remedy is warranted and appropriate because the plaintiff's serious health issues make the taking of her deposition a known serious risk to her health and life.  The plaintiff avers that due to the extraordinary nature of this remedy, the court should schedule a hearing on the matter in order to confect a complete record of the plaintiff's health issues and to determine if alternative remedies, short of prohibition, could be tailored.

---

[18] Exhibit B – Pages 127 to 134.

**A. Standard for Limiting the Scope of Discovery.**

Under Federal Rule of Civil Procedure 26(c), the Court may, for "good cause", issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

> (A) forbidding the disclosure or discovery;
>
> (B) specifying terms, including time and place or allocation of expenses, for the disclosure or discovery;
>
> (C) prescribing a discovery method other than the one selected by the party seeking discovery;
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
>
> (E) designating the persons who may be present while the discovery is conducted;

Fed. R. Civ. P. 26(c)(1). In determining whether a protective order is warranted, courts in the Fifth Circuit are instructed to weigh the hardship to the party from whom discovery is sought against the probative value of the information to the other party. See, e.g., <u>Landry v. Air Line Pilots Ass'n Int'l AFL-CIO</u>, 901 F.2d 404, 436 (5th Cir. 1990) ("Discovery is not justified when cost and inconvenience will be its sole result").

In a similar case a court found the following conditions of a 83 year old man were sufficient to grant a protective order:

> The court has reviewed the letter from Dr. McCarty, who has been Bedford's primary care provider for almost ten years. Along with Bedford's cardiologist, Dr. McCarty has been managing Bedford medically. Bedford is 83 years old and has a history of coronary artery disease, labile hypertension, chronic obstructive pulmonary

> disease, generalized anxiety, and cervical degenerative joint disorder with cervicalgia. He also suffers from age-related physical problems. Between his anxiety and his labile hypertension, Bedford has had his blood pressure rise to stroke levels at times in the past. Dr. McCarty further notes that his anxiety problems have gotten worse since his wife's death. Dr. McCarty opined in his letter, to a reasonable degree of medical certainty, that Bedford is not physically able to sit for a deposition in excess of 30 minutes. Depending on his physical or mental state on any given day, Bedford, per Dr. McCarty, may not be able to tolerate even thirty minutes. Dr. McCarty does think Bedford may be able to offer competent testimony but is limited based on his physical condition. He expressed concern about the stress a deposition could have on his elderly patient.

Bedford v. Am. Honda Motor Co., No. 1:18-CV-175-GHD-DAS, 2019 WL 7040620, at *2 (N.D. Miss. Dec. 20, 2019). The Court opined:

> While not an ideal situation for either party, the court finds the medical opinion proffered by Dr. Guillermo to be compelling and ultimately decisive on the issue of whether to allow the noticed deposition. The court cannot allow this deposition in the face of medical opinion that doing so creates a substantial risk to his health and life.

Other courts have refused to allow depositions under these circumstances. In Frideres v. Schlitx, 150 F.R.D. 153 (S.D. Iowa 1993), the court prohibited a deposition of the plaintiff's sister, when advised by doctor's affidavits that the stress of a deposition might prove fatal to her.

B. Deposition is harassing and irrelevant

Because of the broad scope of subject matter in depositions, an order that no deposition shall be taken of any witness is only entered in the most extraordinary circumstance. Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979) (The trial court did not outright deny leave to take a deposition but required the plaintiff to first take depositions of defendant's designees who were

said to have more direct knowledge.) An order prohibiting the taking of the deposition is both "unusual and unfavorable." Investment Properties, International. Ltd. V. IOS Ltd., 459 F.2d. 705, 708 (2nd Cir. 1972) (Writ of mandamus granted to vacate order quashing deposition notices of defendant's representatives. Plaintiff had to be allowed discovery to establish standing and federal court jurisdiction.). The standard for prohibiting a witness's deposition is high, but to prohibit the deposition of a party, the showing must be even more extraordinary.

The problem presented in this case is related not to a question of the witness's mental competence or lack thereof. Ms. Thibodeaux may have the mental acuity to deliver competent testimony. The issue raised by Dr. Guillermo's letter is whether Ms. Thibodeaux can physically withstand the rigors of a deposition[19]. His letter puts the parties, counsel, and the court on notice that the doctor thinks Ms. Thibodeaux's ability to sit for a deposition is a significant danger to her physical well-being. Plaintiff's counsel tendered their client for deposition and thought she could withstand the rigors of litigation. However, Ms. Thibodeaux's problems testifying became apparent to the interrogation by counsel for State Farm.

The defendant has deposed Ms. Thibodeaux's adult son and caregiver, Stephen Thibodaux, who lives with her and was able to get all the necessary information regarding the Hurricane Laura claim from her adult son. The medical opinion proffered by Dr. Guillermo is compelling and ultimately decisive

---

[19] Exhibit C

on the issue of whether to allow the noticed deposition. The court should not allow this deposition in the face of medical opinion that doing so creates a substantial risk to his health and life.

Between Ms. Thibodeaux's hypertension and anxiety, Dr. Guillermo states that just such a risk exists for Ms. Thibodeaux, though in his case the risk is stroke. This Court, should not assume the responsibility for subjecting Ms. Thibodeaux to a life-threatening deposition.

At the very least, Dr. Guillermo's letter would, at any stage of the litigation, be more than sufficient to sustain the plaintiff's initial burden of proof for a brief stay to allow time for the doctor to be brought before the court "to testify with regard to the protective order." Before granting the extraordinary relief of denying the deposition, the court should conduct an in person hearing if it is not inclined to grant a protective order on the pleadings.

## III. CONCLUSION

Plaintiff, 87-year old Elrine Thibodeaux, respectfully requests that this Honorable Court issue an order prohibiting State Farm from continuing the deposition which began on February 29, 2024, and after four grueling hours of irrelevant and harassing questions in a subsequent deposition on May 22, 2024. Due to her health concerns, the Court should prohibit Defendant, State Farm Fire and Casualty Company, from continuing the deposition in this matter.

**Respectfully Submitted:**

**ROBICHAUX, MIZE, WADSACK, RICHARDSON & WATSON, LLC**

_____
**MATTHEW M. MIZE, Bar No. 33993**
**LANTZ SAVAGE, Bar No. 28418**
1777 Ryan Street (70601)
Post Office Box 2065
Lake Charles, Louisiana 70602
Telephone: (337) 433-0234
Facsimile: (337) 433-8595
Email:   MMM@RMWLEGAL.COM
         LAS@RMWLEGAL.COM
**Counsel for Plaintiff**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel by operation of the court's electronic filing system and/or via electronic mail this 20th day of MAY, 2024.

_____
**LANTZ SAVAGE**